## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**AL-ARIDHI, HAWRAA,**

            Plaintiff,

                                        CASE NO:

-vs-

                                        HON:

**MICHIGAN DEPARTMENT OF CORRECTIONS**,

            Defendant.

                                        **JURY DEMAND**

---

CAIR-MI LEGAL FUND
BY: Amy V. Doukoure (P80461)
Attorney for Plaintiff
1905 S. Haggerty Road, Suite 5
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

---

### COMPLAINT AND JURY DEMAND

**NOW COMES**, Complainant, Hawraa Al-Aridhi, by and through her counsel, CAIR-MI Legal Fund, by Amy V. Doukoure, and in support of her Complaint of Discrimination against the Michigan Department of Corrections, Jeff Tanner and Vincent Amalfitano, jointly and severally Defendants, avers as follows:

## <u>JURISDICTION AND VENUE</u>

1.   The jurisdiction of this Court over this controversy is based on 28 U.S.C. §1331, to enforce the provisions of 42 U.S.C. § 1981.

2.   This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 to address the claims brought under Michigan's Elliott-Larsen Civil Rights Act. MCLA § 37. 2201-2202.

3.   The venue of this Court over this controversy is based on 28 U.S.C. §1391(d). Events giving rise to this litigation occurred in this Judicial District at Defendant Michigan Department of Corrections, Macomb Correctional Facility located at 34625 26 Mile Road, Lennox Township, Macomb County, Michigan.

4.   The amount in controversy exceeds this Court's jurisdictional requirement.

5.   The Plaintiff brings this matter after exhausting all her remedies at the EEOC, and the Michigan Department of Civil Rights (MDCR) with the matter being closed by MDCR as of June 2024.

## <u>PARTIES</u>

6.   Plaintiff, Hawraa Al-Aridhi, is a Muslim Arab American woman of Iraqi descent who resides in the city of Dearborn, County of Wayne, State of Michigan.

7.   Defendant, Michigan Department of Corrections ("MDOC"), is a Michigan governmental agency that has at relevant times employed Plaintiff in Macomb

County Michigan and has refused to rehire Plaintiff despite her exemplary employment record.

## **FACTS**

1.     Plaintiff, Hawraa Al-Aridhi, is a practicing Muslim woman who adheres to the tenants of Islam that require her to wear her hijab at all times in the presence of men who are not close familial relations.[1] Ms. Al-Aridhi is a U.S. Citizen of Iraqi descent .

2.     Ms. Al-Aridhi began working for the Michigan Department of Corrections ("MDOC") as a corrections officer since July 29, 2019 in Respondent's Macomb Correctional Facility.

3.     During her tenure at the Macomb Correctional Facility, Ms. Al-Aridhi was the only Iraqi Muslim woman working at the Macomb Correctional Facility and was the only employee within the facility that wears the hijab. Furthermore, Ms. Al-Aridhi was at that time likely one of only two employees under employ with MDOC who wear the hijab.

4.     Upon information and belief, during Ms. Al-Aridhi's employ at Macomb Correctional Facility ("Facility"), the majority of the officers were white presumably Christian men, with women constituting about 10-15 employees total

---

[1] The "hijab" is the term that relates to a woman's obligation to dress modestly and cover their hair, neck, ears and chest at all times in the presence of men to whom they are not closely related. Sometimes the term "hijab" can be replaced with the term "head scarf" as often times the form of covering worn by female adherents to the Islamic faith.

(with none in leadership or supervisory positions). Furthermore, there are only two other Muslims of Arab descent working at the facility, and upon information and belief were undergoing the same harassment, hostile working environment and different terms and conditions of employment as Ms. Al-Aridhi.

5. On September 12, 2021, Ms. Al-Aridhi was promoted to "acting sergeant," and was later demoted back to corrections officer in December 2021 as a result of discriminatory treatment, harassment, retaliation and a hostile working environment.

6. In fact, following her promotion to Acting Sergeant, Ms. Al-Aridhi has been referred for investigation numerous times despite her previously spotless record all in an attempt to keep Ms. Al-Aridhi from obtaining a permanent promotion to sergeant.

7. Defendant MDOC has a history of allowing non-Muslim men to harass and otherwise create a hostile working environment for Ms. Al-Aridhi throughout her years of employment, and other Muslim employees of MDOC, and further have failed to take steps to investigate and protect employees who've suffered discriminatory treatment and harassment based on her status as a member of a protected class.

8. For instance, on April 20, 2021, Ms. Al-Aridhi who has a serious diabetic condition which is known to the Defendant MDOC employees and

supervisors at the Facility, went to retrieve her insulin out of the employee fridge and found that her medication had been discarded by someone and was therefore unavailable for her use. Ms. Al-Aridhi's medication was clearly labeled with her name and was easily delineated from food items as it readily appeared as medicine with proper pharmaceutical labeling.

9.     Ms. Al-Aridhi complained to supervisors about her medication being discarded but MDOC's employee supervisors claimed that they could not determine who had thrown out the medication. Despite, MDOC's assertions that they could not ascertain the individual who discarded the medication, Ms. Al-Aridhi was able to determine who it was by reviewing the duty roster and determining who was responsible for cleaning the fridge on the day her medication disappeared. Ms. Al-Aridhi was able to confirm that the individual who discarded her medication was a white male officer and believes that he discarded the medicine in an attempt to create a hostile working environment or otherwise intimidate and harass Ms. Alaridhi.

10.    The above example is just one of many examples of how MDOC fails to take complaints of harassment and hostile working environment seriously, and it is further an indication of the lack of any investigation that has taken place with regards to complaints made by Ms. Al-Aridhi about her disparate treatment by MDOC employees, officers, agents and supervisors.

11.     As a direct and proximate result of the treatment that Ms. Al-Aridhi received at the hands of Defendants MDOC, Tanner, and Amalfitano, as more fully outlined below, Ms. Al-Arhidhi left her employment with MDOC for medical reasons related to stress.

## MS. AL-ARIDHI IS SUBJECTED TO A HOSTILE WORKING ENVIRONMENT

12.     As soon as Ms. Al-Aridhi became Acting Sergeant, her direct supervisor Lt. Amalfitano began telling Ms. Al-Aridhi, that she should step down, that she could not make it as a sergeant and that he would respect her for returning to corrections officer.

13.     Upon information and belief, Lt. Amalfitano has never told a white male corrections officer who was an acting sergeant that they should step down and that he didn't believe they could do the job. His statements to Ms. Al-Aridhi in light of his past conduct make it clear that Mr. Amalfitano believed that due to her gender, national origin/race, and religion, he did not believe Ms. Al-Aridhi should hold the position of sergeant.

14.     Lt. Amalfitano's harassment and negative treatment and comments to Ms. Al-Aridhi were only multiplied when Ms. Al-Aridhi applied to fill the permanent position of sergeant in November 2021.

15.     Lt. Amalfitano began not only verbally harassing Ms. Al-Aridhi, but he began engaging in disparate treatment of her with the intention to make her fail at

her duties including scheduling her two job duties each day that were to be performed at the same time, but in different locations of the facility making it impossible for Ms. Al-Arhidhi to complete both tasks.

16.     For instance, Ms. Al-Aridhi was scheduled by Lt. Amalfitano to be supervisor over one unit's yard time located on the outside prison grounds, while at the same time she was scheduled to oversee inmate showers of another unit causing her to be required to be in the indoor unit at the same time.

17.     At no other time were any other white male corrections officers who were full and/or actin sergeants ever scheduled to two separate job duties at the same time, especially those that required them to be in two separate locations at the exact same time.

18.     Ms. Al-Aridhi brought it to the attention of Lt. Amalfitano that he was scheduling her with two separate tasks at the same time, but Lt. Amalfitano continued to schedule Ms. Al-Aridhi in this manner and then utilized this as a means to harass and intimidate her into either stepping down from the position and/or not following through with her application for full time sergeant.

19.     Indeed, Lt. Amalfitano's harassment and comments were so regular, public and severe that Ms. Al-Aridhi had a difficult time with the other corrections officers over whom she had supervisory powers, causing Ms. Al-Aridhi stress, embarrassment, and difficulty in coming to work each day.

20.     The hostile atmosphere created by Lt. Amalfitano was so pervasive that other MDOC officers that other white male officers, on or about November 11, 2021, began telling inmates that Ms. Al-Aridhi wasn't a "real sergeant" undermining Ms. Al-Aridhi's authority with them and possibly creating a safety risk for Ms. Al-Aridhi.

21.     There is no other time that is known to Ms. Al-Aridhi where officers employed by MDOC had discussed the status or rank of MDOC's employees with inmates. Indeed, it appears that MDOC Policy Directives and practices would preclude such conversations between officers and inmates.

22.     As a result of MDOC employees telling inmates that Ms. Al-Aridhi wasn't a "real sergeant" Ms. Al-Aridhi was forced to field inappropriate questions regarding her status within the MDOC from inmates.

23.     Upon information and belief, Ms. Al-Aridhi's status was discussed with inmates in an attempt to harass and embarrass her based on her gender, national origin and religion.

24.     Ms. Al-Aridhi complained about the statements made by the white male officer to the inmates regarding the status of her rank and a formal investigation was opened nearly a month later and resulted in no findings or final determination regarding the complaint.

25.     Ms. Al-Aridhi's allegations of hostile working environment filed with the office of EEO took more than a month to come to light through the beginning

stages of the investigative process, however when allegations were made against Ms. Al-Aridhi investigation into those allegations commenced within days of being made. It is clear that MDOC has a pattern and practice of not taking discrimination complaints seriously and surely not as seriously as they do other types of allegations regarding rule violations.

26.     Additionally, just one day after Ms. Al-Aridhi was notified that she would be interviewing for the full-time position as sergeant with Lt. Amalfitano, a co-worker who is a known friend and associate of Lt. Amalfitano made a false allegation against Ms. Al-Aridhi involving a prisoner.

27.     This white male officer complained that Ms. Al-Aridhi had threatened to use force (in the form of a taser) against an inmate in segregation in his groin, but failed to identify any basis or reason for Ms. Al-Aridhi's alleged threat. The lack of specificity of the circumstances surrounding the alleged threat by Ms. Al-Aridhi are a clear indication that the allegations themselves were pretextual.

28.     Indeed, Ms. Al-Aridhi had no face to face interaction with the inmate whom she allegedly threatened at any time on the date that this alleged incident occurred.

29.     Furthermore, the inmate that Ms. Al-Aridhi supposedly threatened did not file a grievance or any PREA action against Ms. Al-Aridhi despite that inmate being prolific in his filing of grievances against officers.

9

30.     In fact, the subject inmate was so prolific as it pertains to complaining about conduct of officers that he has (1) been moved from several facilities because he has to many PREA's out against officers (2) was eventually moved from Macomb Correctional Facility as a result of the amount of grievances and PREA actions he had against officers there, and (3) MDOC issued a directive that all officers who have any interaction with this inmate activate cameras to capture the entirety of her interactions with him.

31.     It is unlikely that an inmate who is known for filing grievances would have been assaulted either physically or verbally by Ms. Al-Aridhi and not filed any complaints with MDOC regarding that interaction.

32.     It stands to reason that the complaint came from officers and Lt. Amalfitano in an effort to create pretext as to Ms. Al-Aridhi's lack of fitness to be a sergeant and in an effort to harass and intimidate her and thereby creating a hostile working environment for Ms. Al-Aridhi based on her gender, national origin and religion.

33.     The harassment from Lt. Amalfitano as well as fellow corrections officers was so offensive and pervasive that it caused Ms. Al-Aridhi distress and interfered with her ability to do her job and included:

a.  Intentional discarding of Ms. Al-Aridhi's medication placing her in significant medical jeopardy;

b. Inappropriate, unprofessional, demeaning public comments about Ms. Al-Aridhi's fitness as a supervisor and public call for her to step down by Lt. Amalfitano;

c. Inappropriate conversations with inmates regarding Ms. Al-Aridhi's employment status placing thereby undermining her authority and creating a safety risk to her person;

d. Unfounded and false allegations regarding her conduct with inmates in an attempt to soil her spotless reputation and keep her from being permanently promoted.

### PLAINTIFF WAS SUBJECTED TO DIFFERENT TERMS AND CONDITIONS OF EMPLOYMENT

34.     When Ms. Al-Aridhi was Acting Sergeant she was subjected to different terms and conditions of employment by Respondent MDOC in the following ways:

a. Being assigned two separate and competing duties in different locations of the facility making it impossible to carry out her duties in one of the assignments;

b. Not being paid in accordance with her time and terms of payment resulting in loss of wages for hours either worked or credited to her through the MDOC's employment policies;

c. Being subjected to shift changes without the required 96 hour notice that is in place pursuant to MDOC's union contract for corrections officers.

### PLAINTIFF WAS SUBJECTED TO RETALIATION

35.    Ms. Al-Aridhi made a series of complaints to both her union, and, at the advice of her union representative, to the EEO office for the MDOC which included allegations laid forth herein of religion, national origin and gender discrimination starting on or about November 12, 2021.

36.    As a result of her complaints against fellow co-workers for harassment and discrimination, Ms. Al-Aridhi was demoted from acting sergeant back to corrections officer on or about December 2, 2021.

37.    Furthermore, when Ms. Al-Aridhi was demoted, she was also notified on that date that she would be forced to return to second shift as a corrections officer. She was told that her appointment as acting sergeant ended on a "discretionary" basis, but she was provided no information as to who exercised this discretion or the basis for which discretion was founded.

38.    It appears that Ms. Al-Aridhi's appointment as acting sergeant was discretionarily ended due to her complaints about discrimination and harassment that she was facing from her non-Muslim, non-Iraqi, male counterparts.

39.     Ms. Al-Aridhi complained to the acting deputy warden and assistant deputy warden that she should not be forced to report to a different shift without ninety-six (96) hours' notice as required by her union contract for hourly employees.

40.     At that time, Ms. Al-Aridhi also complained that her shift change were done due to discrimination, retaliation and favoritism to her white male non-Muslim counterparts. As a result of this complaint, Ms. Al-Aridhi is being investigated upon a complaint from the Deputy Warden of insubordination and unprofessional behavior.

41.     It was after this complaint to the deputy warden of the facility that Ms. Al-Aridhi was told to report to second shift not in her capacity as acting sergeant, but instead as a corrections officer. Her removal from her appointed position is clearly in retaliation for Ms. Al-Aridhi standing up to enforce the terms of her union contract with MDOC as well as her complaints that she was being treated differently than her similarly situated comparators based on gender, national origin and religion.

42.     When she came into her shift as directed on December 2nd despite the lack of appropriate notice, she found that she had been removed from the schedule all together and was told that they had assumed she wasn't coming in to work that morning. Upon information and belief, she was removed from the schedule based on the belief of MDOC's employees and agents that they had successfully, forced Ms. Al-Aridhi out of her employ with MDOC.

43.     Furthermore, at the time that Ms. Al-Aridhi was removed for discretion from her appointed position as acting sergeant, there was still a need for sergeants on both second and first shift, and she was replaced by less qualified non-Muslim, non-Iraqi and male employees of MDOC.

### *PLAINTIFF SUFFERED A MATERIAL ADVERSE EMPLOYMENT ACTION*

44.     Ms. Al-Aridhi suffered materially adverse employment actions as a result of the hostile working environment as outlined above since her treatment was public, pervasive and offensive to a reasonable observer and caused Ms. Al-Aridhi to take medical leave from work and seek mental health treatment as a result of the outrageous conduct of Respondent MDOC's employees, officers and agents.

45.     Ms. Al-Aridhi suffered materially adverse employment action when she was demoted from acting sergeant as a result of discriminatory treatment including lost wages and loss of reputation.

46.     Ms. Al-Aridhi suffered materially adverse employment action when MDOC failed to promote her to full sergeant despite her qualifications for same due to her gender, national origin and religion.

47.     Ms. Al-Aridhi suffered materially adverse employment action when she was subjected to different terms and conditions of employment when she was acting supervisor.

48.     Ms. Al-Aridhi suffered materially adverse employment action when she was retaliated against for complaining of her disparate and discriminatory treatment when she was demoted and investigated for complaining to the deputy warden regarding the circumstances giving rise to this instant litigation.

### DEFENDANT MDOC FAILED TO REHIRE PLAINTIFF IN RETALIATION FOR HER COMPLAINTS OF DISCRIMINATION

49.     Ms. Al-Arhidhi had filed an initial complaint with the EEO office for the MDOC and filed a complaint of discrimination against the MDOC related to the incidents in November – December 2021 as described above. That MDCR complaint was given the identification number of #22-622845.

50.     In 2023, while that MDCR matter was pending before the MDCR, MDOC sent out a multitude of repeated notices of the "critical staffing shortages" at the various MDOC facilities and provided substantial incentives for individuals who began employment with MDOC or those who referred successful candidates for employment at the MDOC.

51.     One such facility that had a critical staffing shortage was the Women's Huron Valley Correctional Facility ("WHV") located in Ypsilanti Michigan. The WHV is an all woman's facility that require an elevated number of female correction officers to be on staff their to ensure safety and privacy of the female inmates related to laws and regulations governing correctional facilities.

52.     In July 2023, Ms. Al-Aridhi applied to return to work with the MDOC and supplied all necessary paperwork, medical release documents, references and application for re-hire.

53.     Ms. Al-Aridhi also provided recommendation letters in the form of emails by MDOC employees and/or supervisors with whom she had a previous working relationship with. Those letters of recommendation provided glowing recommendations and advised that Ms. Al-Aridhi was a valuable asset to the MDOC.

54.     Additionally, during her tenure at MDOC, Ms. Al-Aridhi had received commendation letters and pins in recognition of her outstanding work, especially during the COVID-19 pandemic.

55.     Despite being cleared for work, and despite having no issues with her previous employment related to discipline, work ethics, or job performance, and despite all of the outstanding recommendations, references and recognitions she obtained while working at MDOC previously, Ms. Al-Aridhi was denied re-employment on or about September 9, 2023.

56.     Upon information and belief, there were white, non-Muslim, male officers who were rehired by MDOC after being terminated for cause, and some white, Non-Muslim, male officers who were rehired despite having a significant amount of disciplinary infractions and inmate complaints on their employment record.

57.     MDOC's decision not to employ Ms. Al-Aridhi despite her prior stellar work performance after her return from medical leave appears to be in blatant retaliation for Ms. Al-Aridhi's prior claims that MDOC failed to promote and/or demoted her based on unlawful discriminatory purposes.

58.     Additionally, there was no rationale or basis for the refusal to hire Ms. Al-Aridhi as a corrections officer with the MDOC which bolsters the belief that the purpose for failing to re-hire Ms. Al-Aridhi was a result of illegal retaliation for Ms. Al-Aridhi's prior MDCR and EEO complaints for the prior discrimination of MDOC, its officers administrators and employees.

59.     Ms. Al-Aridhi's claims of retaliation in the form of failure to rehire her under MDOC's employe are only bolstered by the fact that MDOC is promoting the fact that it has a critical staffing crisis at most, if not all, of its facilities including the facility that Ms. Al-Aridhi had previously worked at-Macomb Correctional Facility, as well as another facility close enough for Ms. Al-Aridhi to commute- the Women's Huron Valley Correctional Facility.

60.     There is no doubt that Ms. Al-Aridhi is a qualified candidate for employment, and that MDOC is currently advertising job openings for the very job that Ms. Al-Aridhi is qualified to perform. As such, the only logical explanation for MDOC's failure to re-hire Ms. Al-Aridhi is based on illegal discrimination in violation of Title VII of the Civil Rights Act.

61.     Counsel for Ms. Al-Aridhi is aware that other former employees of MDOC who were white male Christians and whose national origins were not Iraqi were indeed re-hired by MDOC in 2023 due to the critical staffing shortage despite having (1) been terminated for cause as the basis for their seeking re-employment or (2) having left MDOC's employ leaving behind a trail of disciplinary action against them for misconduct and/or violations of other policies and procedures of the MDOC.

62.     These similarly situated, male white Christian candidates, are indeed much worse candidates for rehire than someone who was described as an essential asset to the MDOC and had no job performance issues in her previous employ with MDOC.

63.     MDOC's failure to rehire is either entirely or primarily a result of unlawful retaliation for Ms. Al-Aridhi engaging in the protected activity of making a civil rights complaint alleging MDOC discriminated against her on a number of occasions as a result of her religion, national origin and gender.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1981**
**RACE AND ETHNICITY DISCRIMINATION**
**(Plaintiff v. Defendants)**

64.     Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

65.     At all times relevant to this action, Defendants were prohibited under 42 U.S.C. § 1981 from making any employment decisions regarding Plaintiff which were motivated by Plaintiffs' race and/or ethnicity.

66.     In violation of this duty, Defendants, subjected Plaintiff to different terms and conditions of employment, violated her rights under the union contract, demoted or failed to promote Plaintiff and terminated Plaintiffs' employment because of her race and/or ethnicity.

67.     The reasons provided for Plaintiffs' treatment at the hands of Defendants were either non-existent or were a pretext for race and/or ethnic discrimination.

68.     As a direct and proximate result of Defendants' race and/or ethnic discrimination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff request the following relief:

a.      An order reinstating Plaintiff to her former positions or comparable positions after the discriminatory and retaliatory work environments have been corrected.

b.      Enjoining Defendants from further retaliation against Plaintiff .

c.    An order awarding Plaintiff  economic and emotional damages, both past and future, in an amount they are found to be entitled to;

d.    An order awarding Plaintiff  punitive damages;

e.    An order awarding Plaintiff  interest, costs, attorney fees and litigation expenses;

f.    An order granting Plaintiff  such other relief as the court deems just and equitable.

## COUNT II
## VIOLATION OF TITLE VII
## RACE/ETHNICITY/NATIONAL ORIGIN DISCRIMINATION
## (Plaintiff  v. Defendants)

69.    Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

70.    At all times relevant hereto, Plaintiff was an employees and Defendants employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000 et seq.

71.    At all times relevant to this action, Defendants were prohibited under Title VII from making any employment decisions regarding Plaintiff  which were motivated by her race, ethnicity, or national origin.

72.    In violation of this duty, Defendants subjected Plaintiff to different terms and conditions of employment, violated her rights under the union contract, demoted or failed to promote Plaintiff and terminated Plaintiffs' employment because of her race and/or ethnicity and/or national origin.

73.     The reasons provided for Plaintiffs treatment were either nonexistent or were a pretext for race and/or ethnicity and/or national origin discrimination.

74.     As a direct and proximate result of Defendants' conduct, Plaintiff have suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of Defendants.

Accordingly, Plaintiff request the following relief:

(a) An order reinstating Plaintiff  to her former positions or comparable positions following the correction of discriminatory and retaliatory environment at MDOC;

(b) An order awarding Plaintiff ' economic and emotional damages, both past and future, in an amount they are found to be entitled to;

(c) An order awarding Plaintiff ' punitive damages as provided for under Title VII;

(d) An order awarding Plaintiff ' interest, costs, attorney fees and litigation expenses as provided for under Title VII;

(e) An order granting Plaintiff ' such other relief as the court deems just and equitable.

**COUNT III
VIOLATION OF TITLE VII
GENDER DISCRIMINATION**

**(Plaintiff  v. Defendants)**

75.     Plaintiff  incorporate by reference the allegations set forth above as if stated in full herein.

76.     At all times relevant hereto, Plaintiff  were employees and Defendants employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000 et seq.

77.     At all times relevant to this action, Defendants were prohibited under Title VII from making any employment decisions regarding Plaintiff which were motivated by her gender.

78.     In violation of this duty, Defendants subjected Plaintiff to different terms and conditions, demotion or failure to promote, and terminated Plaintiffs' employment because of her gender.

79.     The reasons provided for Plaintiffs, different terms and conditions, demotion or failure to promote, and termination were a pretext for gender discrimination.

80.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff  have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of Defendants.

Accordingly, Plaintiff request the following relief:

(a) An order reinstating Plaintiff to her former positions or comparable positions following the correction of discriminatory and retaliatory environment at MDOC;

(b) An order awarding Plaintiff ' economic and emotional damages, both past and future, in an amount they are found to be entitled to;

(c) An order awarding Plaintiff ' punitive damages as provided for under Title VII;

(d) An order awarding Plaintiff ' interest, costs, attorney fees and litigation expenses as provided for under Title VII;

(e) An order granting Plaintiff ' such other relief as the court deems just and equitable.

**COUNT III**
**VIOLATION OF TITLE VII**
**RELIGIOUS DISCRIMINATION**
**(Plaintiff v. Defendants)**

81.    Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

82.    At all times relevant hereto, Plaintiff were employees and Defendants employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000 et seq.

83.    At all times relevant to this action, Defendants were prohibited under Title VII from making any employment decisions regarding Plaintiff which were motivated by her religion.

84.     In violation of this duty, Defendants subjected Plaintiff to different terms and conditions, demotion or failure to promote, and terminated Plaintiffs' employment because of her religion.

85.     The reasons provided for Plaintiffs, different terms and conditions, demotion or failure to promote, and termination were a pretext for religious discrimination.

86.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of Defendants.

Accordingly, Plaintiff request the following relief:

(a) An order reinstating Plaintiff to her former positions or comparable positions following the correction of discriminatory and retaliatory environment at MDOC;

(b) An order awarding Plaintiff ' economic and emotional damages, both past and future, in an amount they are found to be entitled to;

(c) An order awarding Plaintiff ' punitive damages as provided for under Title VII;

(d) An order awarding Plaintiff ' interest, costs, attorney fees and litigation expenses as provided for under Title VII;

(e) An order granting Plaintiff ' such other relief as the court deems just and equitable.

**COUNT III**
**VIOLATION OF TITLE VII**
**HOSTILE WORKING ENVIRONMENT**
**(Plaintiff  v. Defendants)**

87.     Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

88.     At all times relevant hereto, Plaintiff  were employees and Defendants employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000 et seq.

89.     At all times relevant to this action, Defendants owed Plaintiff a duty not to discriminate against her with respect to employment, promotional opportunities, compensation, or other conditions or privileges of employment on the basis of Plaintiffs race, national origin, religion and gender.

90.     Plaintiff is a Muslim, Arab-American of Iraqi descent, and a woman, which makes her a minority in the MDOC in general and at the facility where she worked especially, and as such is a member of a protected class under Title VII of the Civil Rights Act of 1964.

91.     Because of her race, religion, gender and national origin, Plaintiff has been subjected to a treatment during her employ with the MDOC that has been disparate from that accorded to non-Arab American, Non- Muslim, non-Iraqi, male

co-workers of Defendant MDOC and at the facility where Plaintiff was assigned, who have been treated more fairly than Ms. Al-Aridhi.

92.     The reasons provided for Plaintiffs, different terms and conditions of employment, demotion or failure to promote, and termination were a pretext for religious discrimination.

93.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of Defendants.

Accordingly, Plaintiff request the following relief:

(a) An order reinstating Plaintiff to her former positions or comparable positions following the correction of discriminatory and retaliatory environment at MDOC;

(b) An order awarding Plaintiff ' economic and emotional damages, both past and future, in an amount they are found to be entitled to;

(c) An order awarding Plaintiff ' punitive damages as provided for under Title VII;

(d) An order awarding Plaintiff ' interest, costs, attorney fees and litigation expenses as provided for under Title VII;

(e) An order granting Plaintiff ' such other relief as the court deems just and equitable.

**COUNT IV**

## VIOLATION OF TITLE VII
## RETALIATION
### (Plaintiff  v. Defendants)

94.     Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

95.     At all times relevant hereto, Ms. Al-Aridhi was an employee and Defendants were employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000 et seq.

96.     At all times relevant to this action, Defendants were prohibited under Title VII from making any employment decisions regarding Ms. Al-Aridhi which were motivated by Ms. Al-Arhidi complaining about suffering,  race, ethnicity, national origin, gender or religious discrimination.

97.     In violation of this duty, Defendants subjected Plaintiff to different terms and conditions, demotion or failure to promote, and terminated Plaintiff ' employment because of her  race/ethnicity, national origin, gender or religion.

98.     The reasons provided for Ms. Al-Aridhi's treatment and termination were a pretext for race and/or ethnicity and/or national origin and/or religious discrimination.

99.     As a direct and proximate result of Defendants' conduct, Ms. Al-Aridhi has suffered and will continue to suffer lost wages, and other economic advantages of employment; Ms. Dunlap has and will continue to suffer mental anguish,

humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of Defendants.

Accordingly, Plaintiff requests the following relief:

(a) An order reinstating Plaintiff to her former position or a comparable position following the correction of discriminatory and retaliatory environment:

(b) An order awarding Plaintiff economic and emotional damages, both past and future, in an amount she is found to be entitled to;

(c) An order awarding Plaintiff punitive damages as provided for under Title VII;

(d) An order awarding Plaintiff interest, costs, attorney fees and litigation expenses as provided for under Title VII;

(e) An order granting Plaintiff such other relief as the court deems just and equitable.

**COUNT V**
**VIOLATION OF TITLE VII**
**RETALIATION- FAILURE TO HIRE/ REHIRE**
**(Plaintiff D v. Defendants)**

100.    Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

101.    At all times relevant hereto, Ms. Al-Aridhi was a qualified applicant for employment and Defendants were employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000 et seq.

102.    At all times relevant to this action, Defendants were prohibited under Title VII from making any employment decisions regarding Ms. Al-Aridhi which were motivated by Ms. Al-Arhidi complaining about suffering, race, ethnicity, national origin, gender or religious discrimination.

28

103.    In violation of this duty, Defendants failed  hire Ms. Al-Aridhi for employment because of her  race/ethnicity, national origin, gender or religion and in retaliation for filing formal EEO and MDCR complaints against Defendant MDOC accusing them of religious, race/ethnicity, national origin and gender discrimination.

104.    The reasons provided for Ms. Al-Aridhi's failure to be rehired were either non-existent or a pretext for gender, race and/or ethnicity and/or national origin and/or religious discrimination.

105.    As a direct and proximate result of Defendants' conduct, Ms. Al-Aridhi has suffered and will continue to suffer lost wages, and other economic advantages of employment; Ms. Dunlap has and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of Defendants.

Accordingly, Plaintiff requests the following relief:

(f) An order reinstating Plaintiff to her former position or a comparable position following the correction of discriminatory and retaliatory environment:

(g) An order awarding Plaintiff  economic and emotional damages, both past and future, in an amount she is found to be entitled to;

(h) An order awarding Plaintiff  punitive damages as provided for under Title VII;

(i) An order awarding Plaintiff  interest, costs, attorney fees and litigation expenses as provided for under Title VII;

(j) An order granting Plaintiff  such other relief as the court deems just and equitable.

## COUNT VI
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RACE/ETHNICITY/NATIONAL ORIGIN DISCRIMINATION
### (Plaintiff v. Defendants)

106.     Plaintiff  incorporate by reference the allegations set forth above as if stated in full herein.

107.     At all times relevant to this action, Defendants were prohibited under the Elliott-Larsen Civil Rights Act ("ELCRA") from making any employment decisions regarding Plaintiff which were motivated by Plaintiffs race and/or ethnicity and/or national origin, gender or religion.

108.     In violation of this duty, Defendants subjected Plaintiff to different terms and conditions of employment, failed to promote or demoted,  and terminated Plaintiffs employment because of her gender, religion, race and/or ethnicity and/or national origin.

109.     The reasons provided for Plaintiffs treatment were either non-existent or pretext for gender and/or, religion and/or,  race and/or ethnic, and/or national origin discrimination.

110.     As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff requests the following relief:

(a) An order reinstating Plaintiff to her former positions or comparable positions after the discriminatory and retaliatory work environments have been corrected.

(b) Enjoining Defendants from further retaliation against Plaintiff .

(c) An order awarding Plaintiff economic and emotional damages, both past and future, in an amount they are found to be entitled to;

(d) An order awarding Plaintiff interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

(e) An order granting Plaintiff such other relief as the court deems just and equitable.

**COUNT VII**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**RETALIATION**
**(Plaintiff v. Defendants)**

111.    Plaintiff incorporate by reference the allegations set forth above as if stated in full herein.

112.    At all times relevant to this action, Defendants were prohibited under the Elliott-Larsen Civil Rights Act ("ELCRA") from retaliating against Plaintiff for opposing Defendants' decisions regarding Plaintiff which were motivated by Plaintiffs race and/or ethnicity and/or national origin and/or, gender and/or religion.

113.    In violation of this duty, Defendants subjected Plaintiff to different terms and conditions of employment, failed to promote or demoted, and terminated Plaintiffs employment in retaliation against Ms. Al-Aridhi for opposing being

discriminated against based on her, gender and/or, religion and/or race and/or ethnicity and/or national origin.

114.    The reasons provided for Plaintiffs treatment were either non-existent or pretext for gender and/or, religion and/or,  race and/or ethnic, and/or national origin discrimination.

115.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff  requests the following relief:

(a) An order reinstating Plaintiff  to her former positions or comparable positions after the discriminatory and retaliatory work environments have been corrected.

(b) Enjoining Defendants from further retaliation against Plaintiff .

(c) An order awarding Plaintiff  economic and emotional damages, both past and future, in an amount they are found to be entitled to;

(d) An order awarding Plaintiff  interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

(e) An order granting Plaintiff  such other relief as the court deems just and equitable.

## COUNT VIII
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RETALIATION- FAILURE TO HIRE/RE-HIRE

**(Plaintiff v. Defendants)**

116.     Plaintiff  incorporate by reference the allegations set forth above as if stated in full herein.

117.     At all times relevant to this action, Defendants were prohibited under the Elliott-Larsen Civil Rights Act ("ELCRA") from retaliating by failing to hire/re hire  Plaintiff for opposing Defendants' decisions regarding Plaintiff which were motivated by Plaintiffs race and/or ethnicity and/or national origin and/or, gender and/or religion.

118.     In violation of this duty, Defendants failed to hire/re-hire Ms. Al-Aridhi in retaliation for her filing official EEO and MDCR complaints  opposing being discriminated against based on her, gender and/or, religion and/or race and/or ethnicity and/or national origin.

119.     The reasons provided for Plaintiffs failure to be hired/re-hired were either non-existent or pretext for gender and/or, religion and/or,  race and/or ethnic, and/or national origin discrimination.

120.     As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff requests the following relief:

(f) An order reinstating Plaintiff to her former positions or comparable positions after the discriminatory and retaliatory work environments have been corrected.

(g) Enjoining Defendants from further retaliation against Plaintiff.

(h) An order awarding Plaintiff economic and emotional damages, both past and future, in an amount they are found to be entitled to;

(i) An order awarding Plaintiff interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

(j) An order granting Plaintiff such other relief as the court deems just and equitable.

Respectfully Submitted,

**CAIR-MI LEGAL FUND**

/s/ Amy V. Doukoure
By: Amy V. Doukoure (P80461)
Attorney for Plaintiff
1905 S. Haggerty Road, Suite 5
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

Dated: July 22, 2024