UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAWRAA AL-ARIDHI,

        Plaintiff,                    Case No. 2:24-cv-11886

v.                                Honorable Susan K. DeClercq
                                   United States District Judge

MICHIGAN DEPARTMENT OF
CORRECTIONS,

        Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS (ECF No. 5)

Plaintiff Hawraa Al-Aridhi was an employee at Defendant Michigan Department of Corrections' (MDOC) facility in Macomb County. During her employment, Al-Aridhi alleges that she experienced a hostile work environment, harassment, retaliation, and discrimination because of her race, gender, religion, national origin, and ethnicity. She also alleges that MDOC discriminated and retaliated against her by demoting her from a temporary sergeant position and later declining to rehire her during a staffing shortage.

Now, MDOC seeks partial dismissal of Al-Aridhi's claims under Civil Rule 12(b)(1) and (6). As explained below, Al-Aridhi's claims under the Elliott-Larsen Civil Rights Act (ELCRA) and under 42 U.S.C. § 1981 will be dismissed because MDOC is immune from such claims. Moreover, her Title VII claims regarding race

and her Title VII claims based upon her alleged termination will be dismissed for failure to exhaust. But all her other claims will move forward at this juncture. Therefore, MDOC's motion will be granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background

Plaintiff Hawraa Al-Aridhi is an Iraqi-American, Arab woman and practicing Muslim who wears a "hijab at all times in the presence of men who are not close familial relations." ECF No. 1 at PageID.3. In July 2019, Al-Aridhi began working as a corrections officer at Defendant's facility in Macomb County. *Id.* at PageID.3.

In April 2021, Al-Aridhi discovered that the insulin she stored in the employee refrigerator —which she needed for "a serious diabetic condition"— had been discarded. *Id.* at PageID.4–5. Upset that her medication—which was clearly labeled with her name—had been thrown away, Al-Aridhi complained to her supervisors about the incident. *Id.* at PageID.5. Her supervisors informed her that they were not able to determine who had discarded it, but Al-Aridhi says she was able to identify the discarder after simply "reviewing the duty roster" to see who was responsible for cleaning the refrigerator that day. *Id.* She identified the discarder as a white male officer whom she believed acted "in an attempt to create a hostile working environment or otherwise intimidate and harass" her. *Id.* According to Al-Aridhi, this incident was one of many examples of MDOC's failure to investigate and

address harassment and hostile-work-environment complaints both generally and specifically by Al-Aridhi. *Id.*

In September 2021, Al-Aridhi became an "acting sergeant," a temporary position which Al-Aridhi characterizes as a promotion. *Id.* at PageID.4. Al-Aridhi alleges that immediately after her promotion, her direct supervisor "began telling [her] that she should step down, that she could not make it as a sergeant and that he would respect her for returning to corrections officer." *Id.* at PageID.6. Al-Aridhi perceived these comments as discriminatory based on "her gender, national origin/race, and religion" because of her supervisor's "past conduct" and her belief that the supervisor has never made the same comments to white male acting sergeants. *Id.*

In November 2021, Al-Aridhi applied to become a permanent sergeant. *Id.* She alleges that when her supervisor learned of her application, he began verbally harassing her and "engaging in disparate treatment of her with the intention to make her fail at her duties" by double-booking her duties in different locations. *Id.* at PageID.6–7. For example, she says she was simultaneously scheduled to supervise yard time outside and shower time inside, which could never be performed at the same time. *Id.* at PageID.7. She adds that no white male officers or acting sergeants were double-booked like she was. *Id.* Al-Aridhi brought the issue to her supervisor's attention, but he continued to double-book her, allegedly "as a means to harass and

intimidate her into stepping down" or not applying for the permanent sergeant position. *Id.*

That same month, other officers "began telling inmates that Ms. Al-Aridhi wasn't a 'real sergeant' undermining [her] authority with them[,] [] possibly creating a safety risk for" her, and causing her "to field inappropriate questions about her status" from the inmates. *Id.* at PageID.8. Al-Aridhi attributes this as a result of her supervisor creating a pervasive hostile atmosphere and an effort to "harass and embarrass her based on her gender, national origin and religion." *Id.*

Later, Al-Aridhi learned that she was selected to interview for the permanent sergeant position. *Id.* at PageID.9. The next day, one of her white male co-workers "made a false allegation" that she had threatened to tase an inmate. *Id.* Al-Aridhi perceived the allegation as pretextual because she had not had any interaction with this particular inmate and the inmate—who was a prolific grievance-filer—did not file a grievance against her. *Id.* at PageID.9–10.

In December 2021, Al-Aridhi learned she would not be offered a permanent sergeant position and was, instead, "demoted back to corrections officer" despite an ongoing need for sergeants. *Id.* at PageID.4, 12, 14. Upon notice of her "demotion," Al-Aridhi was informed that her role as acting sergeant "ended on a 'discretionary' basis." *Id.* at PageID.12. But Al-Aridhi was not told who made the decision or why. *Id.*

- 4 -

At the same time, Al-Aridhi was told that as a corrections officer again, she would be assigned to a second-shift position[1] which, she alleges, violated the union contract's 96-hour notice requirement for any shift changes. *Id.* at PageID.12. Al-Aridhi complained to her superiors about the notice violation and alleges that the shift change was done "due to discrimination, retaliation and favoritism to her white male non-Muslim counterparts.". *Id.* at PageID.13. Al-Aridhi alleges that after making this complaint, the MDOC deputy warden began investigating her for "insubordination and unprofessional behavior." *Id.*

When Al-Aridhi reported to work as a second-shift correctional officer, she discovered that she had been removed from the schedule and "was told that they had assumed she wasn't coming in to work that morning." *Id.* at PageID.13. Meanwhile, the sergeant position was allegedly filled "by less qualified non-Muslim, non-Iraqi and male employees." *Id.* at PageID.14. Al-Aridhi eventually "left her employment with MDOC for medical reasons related to stress.". *Id.* at PageID.6.[2]

---

[1] It is not clear whether Al-Aridhi was a second-shift corrections officer *before* she was elevated to the role of acting sergeant or not.

[2] Al-Aridhi's complaint suggests that she went on medical leave and eventually left her position, but it is not clear when or under what circumstances she left her job. ECF No. 1 at PageID.17. In MDOC's motion, it explains that Al-Aridhi "opted to go on a Waived Rights Leave of Absence from MDOC in July 2022." ECF No. 5 at PageID.68. Although this provides useful clarity and context, this Court will not consider this fact because it is outside "the 'four corners' of the complaint." *See VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 399 (6th Cir. 2025).

In 2023, MDOC began issuing "notices of the 'critical staffing shortages' at various MDOC facilities and provided substantial incentives for individuals who began employment with MDOC or those who referred successful candidates for employment." *Id.* at PageID.15. In response, Al-Aridhi applied in July 2023 to be re-hired by MDOC. *Id.* at PageID.16. In September 2023, despite her "glowing recommendation[]" letters, commendations, and experience, Al-Aridhi was not re-hired. *Id.*

## B. Procedural History

Al-Aridhi filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) and Michigan Department of Civil Rights (MDCR) in March 2022 and October 2023, *see* ECF Nos. 5-2; 5-3.Her EEOC case was closed in June 2024, *see* ECF No. 1 at PageID.3, and she was issued a right to sue letter in May 2024, *see* ECF No. 5 at PageID.69

On July 22, 2024, Al-Aridhi filed her complaint in this case, raising ten counts of federal and state of employment discrimination and retaliation. ECF No. 1. Notably, the counts in Al-Aridhi's complaint are misnumbered (there are several counts labeled "Count III"), so for clarity, this Court will re-number Al-Aridhi's counts below:

| COUNT | CLAIM |
|-------|-------|
| I | Violation of 42 U.S.C. § 1981 (Race and Ethnicity Discrimination) |
| II | Violation of Title VII (Race/Ethnicity/National Origin Discrimination) |
| III | Violation of Title VII (Gender Discrimination) |

| IV | Violation of Title VII (Religious Discrimination) |
| V | Violation of Title VII (Hostile Working Environment) |
| VI | Violation of Title VII (Retaliation) |
| VII | Violation of Title VII (Retaliation-Failure to Hire/Rehire) |
| VIII | Violation of the Elliott-Larsen Civil Rights Act (Race/Ethnicity/National Origin Discrimination) |
| IX | Violation of the Elliott-Larsen Civil Rights Act (Retaliation) |
| X | Violation of the Elliott-Larsen Civil Rights Act (Retaliation-Failure to Hire/Rehire) |

*See* ECF No. 1 at PageID.18–33.

Though she alleges ten counts, the factual basis for many of Al-Aridhi's counts is largely based upon her allegation that MDOC subjected her to a hostile work environment on the basis of her race, ethnicity, national origin, gender, and religion. Moreover, Al-Aridhi alleges MDOC discriminated against her on the basis of those same characteristics when it demoted her, failed to promote her, and later failed to rehire her. Al-Aridhi also alleges she was retaliated against for complaining of her hostile work environment and discrimination.

Now before this Court is MDOC's partial motion to dismiss, seeking dismissal of all Al-Aridhi's ELCRA claims, all her § 1981 claims, and several of her Title VII claims. ECF No. 5. Al-Aridhi opposes MDOC's motion. ECF No. 7.

## II. LEGAL STANDARDS

Under Civil Rule 12(b)(1), a party or the court may, at any stage, raise a defense that the court lacks subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Such a motion "can challenging the sufficiency of the pleadings itself (facial attack)

or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garneri*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). For facial attacks, the court presumes that the allegations in the complaint are true for its analysis. *Id.* For factual attacks, the "court has broad discretion with respect to what evidence to consider . . . including evidence outside of the pleadings . . . Plaintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.* at 759–60. A court must dismiss any pleadings if "the court lacks jurisdiction of the subject matter." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (quoting Civil Rule 12(h)(3)).

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d

502, 503 (6th Cir. 2013). Otherwise, the Court must grant the motion to dismiss. *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

### A. ELCRA Claims

MDOC asserts that it is immune from ELCRA claims as a state entity. ECF No. 5 at PageID.54, 65, 73–75. Al-Aridhi contends that the claims survive because she alleges an ongoing constitutional violation and seeks prospective injunctive relief. ECF No. 7 at PageID.106–08. This Court finds that MDOC is correct.

Under the Eleventh Amendment to the United States Constitution, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. CONST. amend. XI. As this amendment makes clear, states possess sovereign "immunity from suits in federal courts" and immunity from suits "by citizens of the same State" or another state or country. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). In addition to circumstances in which a state's immunity can be waived or inapplicable, the *Ex parte Young* doctrine provides that "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)).

The Sixth Circuit Court has repeatedly held that MDOC, as an arm of the state, is immune from suit under the Eleventh Amendment. *See, e.g.*, *Harris v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (affirming that MDOC is immune from suit); *Sims v. Mich. Dep't of Corrs.*, 23 F. App'x 214, 215 (6th Cir. 2001) ("Because the MDOC is a state agency and the State of Michigan has not consented to civil rights suits in the federal courts, the MDOC is entitled to Eleventh Amendment immunity."); *Cromer v. United States*, No. 16-2111, 2017 WL 3391670 at *2 (6th Cir. June 28, 2017) ("[A]s an arm of the state, the MDOC is absolutely immune from suit under the Eleventh Amendment …."); *Erdman v. Mich. Dep't of Corrs.*, No. 94-2109, 1995 WL 150341 at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688 at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corrs.*, No. 86-1083, 1987 WL 36006 at *1 (6th Cir. May 7, 1987).

And Michigan's enactment of ELCRA did not waive Michigan's immunity from suit in federal court. *See Freeman v. Michigan*, 808 F.2d 1174, 1179 (6th Cir. 1987) (holding that Michigan's enactment of anti-workplace discrimination laws did not serve as a waiver of immunity and consent to be sued in federal court). Accordingly, any ELCRA claims against MDOC are barred by the Eleventh Amendment and must be dismissed. *See Arojojoye v. Mich. Dep't of Corrs.*, No. 14-cv-11136, 2014 WL 6612389 at *2 (E.D. Mich. Nov. 20, 2014).

Although Al-Aridhi argues that her ELCRA claims should survive dismissal because she seeks prospective injunctive relief under the *Ex parte Young* doctrine, that doctrine was "carved out [as] an exception to the States' constitutional immunity from suit" by permitting "federal courts to enjoin state *officials* from future enforcement of state legislation that violates federal law." *Ernst*, 427 F.3d at 367 (citing *Ex parte Young*, 209 U.S. at 159–60) (emphasis added). As established, "MDOC is a state agency," not a state official. *See Sims*, 23 F. App'x at 215. Therefore, the exception for prospective injunctive relief does not save Al-Aridhi's ELCRA claims. *See Lawson v. Shelby Cnty., TN*, 211 F.3d 331, 335 (6th Cir. 2000) ("Injunctive relief is available under the *Young* exception only against state officers—not the state itself—who violated federal law."). For these reasons, Al-Aridhi's ELCRA claims will be dismissed. *See id.*

## B. 42 U.S.C. § 1981 Claims

Al-Aridhi alleges discrimination based on race and ethnicity under 42 U.S.C. § 1981 and seeks reinstatement to her former or comparable position, enjoinment from further retaliation, and damages. ECF No. 1 at PageID.19–20. MDOC argues that these claims must be dismissed because 42 U.S.C. § 1981 does not provide remedies for alleged constitutional violations by state actors. However, this Court

need not address this argument because MDOC's Eleventh Amendment immunity—as discussed in the preceding section—applies to 42 U.S.C. § 1981 claims as well.[3]

Again, MDOC is a state agency that enjoys sovereign immunity, absent congressional abrogation or state waiver. *See Sims*, 23 F. App'x at 215. Here, no such abrogation or waiver has transpired. The present case mirrors the facts in *Simpson v. United Auto Workers Local 6000*, in which the plaintiff sued MDOC under 42 U.S.C. § 1981 for "terminating her because of her race." 394 F. Supp. 991, 1001 (E.D. Mich. 2005). In *Simpson*, the Court held that "[s]ince MDOC is a state agency protected by Eleventh Amendment immunity, Plaintiff's § 1981 claim against MDOC must be dismissed." *Id.* (citing *Thompson v. Mich. Dep't of Corrs.*, 25 F. App'x 357, 358 (6th Cir. 2002)).

And again, the injunctive relief exception under *Ex parte Young* does not apply because Al-Aridhi has sued MDOC rather than individual state actors. *See Freeman*, 808 F.2d at 1178–79 ("Thus, the Eleventh Amendment bars a § 1981 action against a state."). As the Sixth Circuit Court plainly held in *Freeman*, a plaintiff seeking

---

[3] Although MDOC does not raise Eleventh Amendment immunity as a basis for dismissal of Al-Aridhi's § 1981 claims as it did for the ELCRA claims, this Court may address sovereign immunity here as well because immunity functions as a jurisdictional bar that courts may raise on their own initiative. *See Cady v. Arenac Cnty.*, 574 F.3d 334, 344–45 (6th Cir. 2009); *see also Sanders v. Wayne State Univ.*, No. 22-12025, 2023 WL 6035570 at *2 (E.D. Mich. Aug. 9, 2023), *report and recommendation adopted*, No. 22-CV-12025, 2024 WL 340812 (E.D. Mich. Jan. 30, 2024) (raising and applying sovereign immunity to the plaintiff's § 1981 claims *sua sponte*).

injunctive relief under § 1981 claims could be granted against state officials sued in their official capacities, but "[t]he Eleventh Amendment prohibits a federal court from granting even this [injunctive] relief against a state or state agency." 808 F.2d at 1179. For these reasons, Al-Aridhi's claims under 42 U.S.C. § 1981 will be dismissed.[4] *See id.*

### C. Title VII Claims

Al-Aridhi brings a host of claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *See* ECF No. 1. MDOC moves for dismissal of a handful of these claims for various reasons. *See* ECF No. 5 at PageID.76–82. Each will be discussed in turn.

#### 1. Ethnicity Discrimination

MDOC first argues that Al-Aridhi's Title VII claims involving discrimination based on ethnicity must be dismissed under Civil Rule 12(b)(6) because ethnicity is not included as a protected class under Title VII. ECF No. 5 at PageID.76. Al-Aridhi responds that "ethnicity" is inherently included within the purview of Title VII. ECF

---

[4] Moreover, it appears MDOC is correct that 42 U.S.C. § 1983 exclusively provides remedies for § 1981 claims, as it argues in its motion for partial dismissal. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (holding that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981" for claims against a local government). But even if Al-Aridhi had brought her claims under § 1983, § 1983 serves as "the exclusive mechanism to vindicate violations of § 1981 *by an individual state actor acting in his individual capacity*" and does not apply to the state or state entities like MDOC. *See McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (emphasis added).

No. 7 at PageID.112–13. This Court finds that claiming discrimination based on ethnicity under Title VII is not grounds for dismissal under Civil Rule 12(b)(6).

Title VII of the Civil Rights Act of 1964 "prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin, or retaliating against their employees for opposing or seeking relief from such discrimination." *Green v. Brennan*, 578 U.S. 547, 549 (2016). Although MDOC is correct that ethnicity is not specifically listed as a basis in Title VII, courts have interpreted Title VII to recognize ethnicity as a cognizable aspect of Title VII's anti-discrimination provisions. Most notably, the United States Supreme Court stated that "Title VII seeks to protect, namely, victims of race-based, *ethnic-based*, religion-based, or gender-based discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66 (2006) (emphasis added). The Supreme Court interpreted Title VII's anti-discrimination as one that "seeks a workplace where individuals are not discriminated against because of their racial, *ethnic*, religious, or gendered-based status." *Id.* at 63 (emphasis added).

These statements suggest that the Supreme Court used "ethnicity" to encompass the other categories in Title VII not listed in its opinion: "color" and "national origin." Similarly, the Sixth Circuit Court has also incorporated "ethnicity" within other Title VII categories. For example, in *Equal Employment Opportunity Commission v. R.G. & G.H. Harris Funeral Homes, Inc.*, the Sixth Circuit

- 14 -

"recognized that claims alleging discrimination on the basis of ethnicity may fall within Title VII's prohibition on discrimination on the basis of national origin" despite another federal statute, 20 U.S.C. § 1092(f)(1)(F)(ii), treating "national origin" and "ethnicity" as separate bases. 884 F.3d 560, 579 (citing *In re Rodriguez*, 487 F.3d 1001, 1006 n. 1 (6th Cir. 2007)).

Such recognition aligns with the definition of "national-original discrimination" provided in *Black's Law Dictionary* (12th ed. 2024): "discrimination based on a person's ethnicity (or presumed ethnicity), cultural heritage, or association with a certain group or organization." Similarly, ethnicity has been subsumed under race for Title VII claims, as was the case in *Ortiz v. Hershey Company*, in which the Sixth Circuit held that a Hispanic employee established racial discrimination under Title VII despite the fact that "Hispanic" is an ethnicity. 580 F. App'x 352, 356 (6th Cir. 2014); *see also Arredondo v. Beer Barrel Inc.*, 645 F. Supp. 3d 739, 748 n. 7 (N.D. Ohio 2022) ("'Hispanic' is an ethnicity, not race, category, but Title VII's prohibition on race discrimination encompasses discrimination due to ethnicity." (citing *Ortiz*, 580 F. App'x at 356)). In this respect, this Court finds no reason to dismiss Al-Aridhi's discrimination claims on the basis of ethnicity when they are clearly alleged in conjunction with national origin and race.

Even if this Court were to find that Al-Aridhi properly alleged a separate and independent Title VII claim of discrimination based on ethnicity, there is precedent to support this finding as well. In *Torres v. County of Oakland*, the Sixth Circuit stated that "a continuing use of racial *or* ethnic slurs would violate Title VII" of the Civil Rights Act of 1964. 758 F.2d 147, 152 (6th Cir. 1985) (emphasis added). The disjunctive "or" is key because it suggests that ethnic slurs would violate Title VII regardless of whether the slurs occurred alongside racial slurs. *See id.* Likewise, the Eleventh Circuit observed—and the Sixth Circuit Court acknowledged—that "an employer violates Title VII simply by creating or condoning an environment at the workplace which significantly and adversely affects [the psychological well-being of] an employee because of his race *or* ethnicity." *Erebia v. Chrysler Plastic Products Corp.*, 772 F.2d 1250, 1256 (6th Cir. 1985) (quoting *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1358 (11th Cir. 1982)) (emphasis added). Similarly, in *Das v. Ohio State University*, the Sixth Circuit recognized that a plaintiff who asserted discrimination based on ethnicity under Title VII satisfied the requirement that she prove membership "of the protected class, *i.e.*, an ethnic minority." 57 F. App'x 675, 679 (6th Cir. 2003) (citation modified). Therefore, this Court will not dismiss Al-Aridhi's Title VII claims based on ethnicity.

*2. Failure to Exhaust*

Next, MDOC argues that several categories of Al-Aridhi's Title VII claims must be dismissed because Al-Aridhi did not exhaust her administrative remedies by making such allegations in her EEOC charges. *See* ECF No. 5 at PageID.77–80.

It is true that a plaintiff bringing a Title VII claim must first exhaust their administrative remedies by filing a charge with the EEOC. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). The exhaustion requirement "serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Younis*, 610 F.3d at 361 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)).

Here, MDOC asserts there are four categories of claims that Al-Aridhi failed to address in her EEOC charges: (1) claims relating to allegations of her termination; (2) claims regarding alleged violations of the union contract; (3) claims regarding race; and (4) claims regarding alleged retaliation in other terms and conditions of employment. ECF No. 5 at PageID.77–80.

*Termination-related claims*. Al-Aridhi did not exhaust any of her Title VII claims relating to her alleged termination. Neither of Al-Aridhi's EEOC charges allege she was terminated, and her October 2023 charge alleges only that she "left her employment" in December 2021 "on approved medical leave" and then MDOC subsequently "fail[ed] to rehire [her]" in September 2023. ECF No. 5-3 at PageID.91; *see also* ECF No. 5 at PageID.77–78. Notably missing from this charge—as well as Al-Aridhi's complaint, ECF No. 1—is any allegation of *when* or *under what circumstances* Al-Aridhi and MDOC ended their employment relationship. *See* ECF No. 5-3.

Al-Aridhi argues that she sufficiently exhausted her administrative remedies related to her termination claims because MDOC's September 2023 denial of re-employment is an adverse employment action. *See* ECF No. 7 at PageID.115. Maybe so. But in making such an argument, Al-Aridhi herself admits that her EEOC charge alleged merely a *failure to rehire*, not the *termination* of her original employment.

*Claims related to violations of union contract*. MDOC argues that Al-Aridhi's claims regarding union contract violations must be dismissed because she did not allege a violation of the union contract in her EEOC charge. ECF No. 5 at PageID.77–8. But Al-Aridhi does not bring a separate claim for violation of the union contract. *See generally* ECF No. 1. Instead, it appears she cites the union-contract violation as an example of disparate treatment, which she alleges in her

March 2022 EEOC charge. *See* ECF No. 5-2. Accordingly, this claim is not barred on the basis of exhaustion.

*Race claims.* Al-Aridhi did not exhaust any of her Title VII claims related to race. Indeed, there is no mention of race in either of Al-Aridhi's EEOC charges. *See* ECF Nos. 5-2; 5-3. And "the lack of *any* mention of race" in the EEOC charge places it outside the scope of the charge, thus barring race claims in this suit. *Dark v. Salvation Army Chattanooga*, No. 1:17-CV-225, 2018 WL 3430677, at *4 (E.D. Tenn. July 16, 2018); *see also Wondrak v. Cleveland Metro. Sch. Dist.*, No. 1:18CV01977, 2019 WL 6683197, at *4 (N.D. Ohio Dec. 6, 2019) (dismissing claims of race discrimination when EEOC charge did "not give any indication of discrimination based on race" and there was no "mention of race in the written narrative" of the EEOC charge.").

*Retaliation claims regarding other terms and conditions of employment.* Al-Aridhi sufficiently exhausted her administrative remedies related to her claims of retaliation in other terms and conditions of employment. MDOC simply argues that Al-Aridhi "failed to allege that she was subjected to other terms and conditions of her employment in retaliation for engaging in a protected activity." ECF No. 5 at PageID.80; *see also* ECF No. 1 at PageID.27. In this way, it is not exactly clear to this Court the scope of the dismissal MDOC seeks under this argument. But Al-Aridhi's March 2022 EEOC charge does allege generally that she was not promoted

- 19 -

as a form of retaliation. *See* ECF No. 5-2 at PageID.87. Although it is not immediately clear from the face of Al-Aridhi's March 2022 EEOC charge what protected activity might form the basis of her retaliation charge, under a liberal construction,[5] it is reasonable to assume that the EEOC's investigation of Al-Aridhi's charges of discrimination and retaliation for failure to promote would have led to uncovering the specific details of Al-Aridhi's pre-EEOC-charge retaliation claims such that they have been exhausted. Moreover, to the extent that Al-Aridhi's complaint here alleges retaliation for the filing of an EEOC charge, such a claim need not be exhausted, as the Sixth Circuit has suggested that "retaliation growing out of the EEOC charge is reasonably foreseeable and therefore a plaintiff is not required to file yet another EEOC charge." *Scott v. Eastman Chem. Co.*, 275 F. App'x

---

[5] MDOC argues that Al-Aridhi's EEOC charges are not entitled to a liberal construction because she was represented by counsel at the time she filed both EEOC charges. *See* ECF No. 9 at PageID.132–33. But the Sixth Circuit has noted that "the fact that we liberally construe EEOC charges filed by *pro se* complainants 'does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel.'" *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001)). Also, although her EEOC charges may have been submitted by Al-Aridhi's attorney, this Court will not rely on MDOC's bare assertion to conclude that Al-Aridhi's attorney drafted the EEOC charges. *See* ECF No. 9 at PageID.133 (alleging that Al-Aridhi's attorney "had a hand in drafting both complaints."). Absent conclusive evidence regarding who drafted the EEOC charges, at this juncture, this Court will construe the EEOC charges liberally. *See Spann v. Tenn. Dep't of Corr.*, No. 1:25-CV-00005, 2025 WL 1680014, at *5 (M.D. Tenn. June 13, 2025) (deciding to construe an EEOC charge liberally absent any evidence regarding whether the plaintiff's counsel had assisted the plaintiff in preparing the EEOC charge).

466, 474 (6th Cir. 2008) (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546–47 (6th Cir. 1991)). Thus, Al-Aridhi's retaliation claims are not barred on the basis of exhaustion.

In sum, Al-Aridhi's Title VII claims which rely on violations of the union contract to show disparate treatment and her Title VII claims for retaliation will move forward. But Al-Aridhi's Title VII claims regarding race and her claims based upon her alleged termination are unexhausted and will accordingly be dismissed without prejudice.

### 3. Adverse Action

Finally, MDOC argues that any of Al-Aridhi's Title VII claims premised on her alleged "demotion" from an acting-sergeant back to a corrections officer must be dismissed because reverting back to the employee's original position after a temporary reassignment is not an adverse employment action. ECF No. 5 at PageID.80–82. Al-Aridhi contends that regardless of the position's temporary nature, her reassignment "involved a loss of duties, responsibilities, and possibly benefits." ECF No. 7 at PageID.117.

Title VII "prohibits discrimination with respect to employment decisions[, *i.e.*, adverse employment actions,] that have direct economic consequences, such as termination, demotion, and pay cuts." *Vance v. Ball State Univ.*, 570 U.S. 421, 426 (2013) (citing 42 U.S.C. § 2000e–2(a)(1)). "An adverse employment action

- 21 -

'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Proving that an adverse employment action occurred is necessary element of a prima facie case of discrimination or retaliation under Title VII. *See id.* at 727, 730. "In the context of a Title VII discrimination claim, an adverse employment action is defined as a 'materially adverse change in the terms of conditions' of employment." *Id.* at 727 (quoting *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). For a retaliation claim under Title VII, a plaintiff can allege that "the defendant took an action that was 'materially adverse' to the plaintiff" because of the plaintiff engaging in a protected activity. *Laster*, 746 F.3d at 730.

"[R]eassignment of job duties is not automatically actionable" as an adverse employment action, but rather depends on whether the change was "materially adverse" through, say, having less-desirable duties or losing prestige. *Burlington N. & Santa Fe Ry.*, 548 U.S. at 70–71. Similarly, a temporary change does not automatically qualify as an adverse employment action. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (stating that a temporary action that did not create losses in salary or benefits is not a materially adverse action). For

example, a temporary role-reversal between employees in which the plaintiff's salary and workload remained the same does not constitute an adverse employment action. *See Stewart v. Esper*, 815 F. App'x 8, 18 (6th Cir. 2020).

However, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and" is a question for a jury. *Burlington N. & Santa Fe Ry.*, 548 U.S. at 70–71. And at the motion-to-dismiss stage, the Court must accept Al-Aridhi's allegations as true without considering facts beyond the pleadings. *See VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 399 (6th Cir. 2025). Here, Al-Aridhi alleges that her change from temporary acting sergeant back to corrections officer was a "demotion" that occurred because of discrimination and retaliation. *See* ECF No. 1 at PageID.20–28. Although the sergeant position was temporary, Al-Aridhi pleads that the position ended on a discretionary basis and that she experienced "lost wages and loss of reputation." *Id.* at PageID.12, 14.

MDOC argues that Al-Aridhi's position change is not a demotion by virtue of the position explicitly being temporary under the Michigan Civil Service Commission's rules and regulations, which caps the length of a temporary position at 26 pay periods. ECF No. 5 at PageID.81–82. But MDOC's argument is premature. True, the state rules and regulations may have been a legitimate basis for MDOC's decision to return Al-Aridhi to a corrections officer position. But it is just as true that

MDOC could have returned Al-Aridhi to a corrections officer role *before* the 26-pay-period deadline and *before* the position was filled for discriminatory or retaliatory reasons. Indeed, Al-Aridhi alleges the decision to return her to a corrections officer role was a discretionary decision based on a discriminatory and/or retaliatory motive. *See* ECF No. 1 at PageID,12; 14. And there is no express authority in the Sixth Circuit declaring that a temporary promotion followed by a return to an original position may *never* be an adverse employment action.[6]

Thus, at this motion-to-dismiss stage, "without the benefit of discovery," Al-Alridhi's allegations that her position change was a discriminatory and/or retaliatory demotion will move forward as an adverse employment action sufficient to give rise

---

[6] Indeed, much of the caselaw in the Sixth Circuit addressing temporary employment changes does so in the context of temporary lateral changes or temporary demotions. *See, e.g.*, *Stewart v. Esper*, 715 F. App'x 8, 18 (6th Cir. 2020) (holding that a temporary position switch with another employee involving no change in salary or benefits was not an adverse employment action); *Kinamore v. EPB Elec. Util.*, 92 F. App'x 197, 202–03 (6th Cir. 2004) (holding that a temporary "clean-up responsibility" assignment that was a seasonal task and, therefore, "by definition a temporary job assignment" could not be construed as an adverse employment action); *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (citing *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) and finding that there was no adverse action under Title VII for "a temporary job reassignment that resulted in no pay or benefits reduction"); *Bowman v. Shawnee State Univ.*, 220 F.3d 546, 461 (6th Cir. 2000) (finding that the plaintiff "did not suffer an adverse employment action by a very temporary loss of his position"); *McAfee v. Phifer*, No. 2:19-CV-12956-TGB, 2020 WL 5596098 at *10 (E.D. Mich. Sept. 18, 2020) (finding that "a temporary probationary period does not constitute an adverse employment action under the ELCRA and Title VII because of its temporary nature and because it does not materially impact the plaintiff's employment status, benefits, or responsibilities").

to a Title VII claim. *See Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020). However, this Court notes that MDOC is free to raise this argument again at summary judgment, after the circumstances of the position change are borne out through discovery.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that MDOC's Partial Motion to Dismiss, ECF No. 5, is **GRANTED IN PART** to the extent that:

1. Al-Aridhi's ELCRA claims (re-numbered Counts VIII, IX, and X) are **DISMISSED WITH PREJUDICE**;

2. Al-Aridhi's 42 U.S.C. § 1981 claim (re-numbered Count I) is **DISMISSED WITH PREJUDICE**;

3. Any of Al-Aridhi's Title VII claims based on race discrimination are **DISMISSED WITHOUT PREJUDICE**; and

4. Any of Al-Aridhi's Title VII claims based on her alleged termination are **DISMISSED WITHOUT PREJUDICE**.

Further, it is **ORDERED** that MDOC's Partial Motion to Dismiss, ECF No. 5, is **DENIED IN PART** in all other respects.

| COUNT | CLAIM | STATUS |
|-------|-------|--------|
| I | Violation of 42 U.S.C. § 1981 (Race and Ethnicity Discrimination) | **Dismissed with prejudice** |
| II | Violation of Title VII (Race/Ethnicity/National Origin Discrimination) | Live, but dismissed without prejudice to the extent it is (1) based on race; and (2) based upon her alleged termination |
| III | Violation of Title VII (Gender Discrimination) | Live, but dismissed without prejudice to the extent it is based upon her alleged termination |
| IV | Violation of Title VII (Religious Discrimination) | Live, but dismissed without prejudice to the extent it is based upon her alleged termination |

| V | Violation of Title VII (Hostile Working Environment) | Live, but dismissed without prejudice to the extent it is based upon her alleged termination |
| VI | Violation of Title VII (Retaliation) | Live, but dismissed without prejudice to the extent it is based upon her alleged termination |
| VII | Violation of Title VII (Retaliation-Failure to Hire/Rehire) | Live, but dismissed without prejudice to the extent it is based upon her alleged termination |
| VIII | Violation of ELCRA (Race/Ethnicity/National Origin Discrimination) | **Dismissed with prejudice** |
| IX | Violation of ELCRA (Retaliation) | **Dismissed with prejudice** |
| X | Violation of ELCRA (Retaliation-Failure to Hire/Rehire) | **Dismissed with prejudice** |

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 30, 2025